UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

FLOYD COWART,

                            Plaintiff,

        v.

OMAR ABDEL-RAZZAQ, Chaplain,

                            Defendant.

                                **DECISION**
                              **and**
                              **ORDER**

                            **08-CV-00554F**
                              **(consent)**

───────────────────────────────

APPEARANCES:        FLOYD COWART, *Pro Se*
                        81-A-3652
                        Auburn Correctional Facility
                        Box 618
                        Auburn, New York 13021

                        ERIC T.  SCHNEIDERMAN
                        Attorney General, State of New York
                        Attorney for Defendants
                        MICHAEL A. SIRAGUSA
                        Assistant New York Attorney General
                        Main Place Tower
                        Suite 300A
                        350 Main Street
                        Buffalo, NY 14202,
                        MARITZA C.  BUITRAGO
                        Assistant New York Attorney General, of Counsel
                        144 Exchange Boulevard
                        Suite 200
                        Rochester, New York 14614

## <u>JURISDICTION</u>

On February 24, 2009, the parties to this action consented pursuant to 28 U.S.C.

§ 636(c)(1) to proceed before the undersigned.  The matter is presently before the court

on Defendant's motion for summary judgment (Doc. No. 26), filed March 18, 2010.

**BACKGROUND**

Plaintiff Floyd Coward ("Plaintiff" or "Cowart"), an inmate in the custody of New York State Department of Corrections ("DOCS"), and proceeding *pro se*, commenced this civil rights action on July 28, 2008, alleging that while incarcerated at Five Points Correctional Facility ("Five Points" or "the correctional facility"), in Romulus, New York, Defendant Omar Abdel-Razzaq ("Defendant" or "Abdel-Razzaq"), violated his First Amendment rights by retaliating against Plaintiff for seeking redress of grievances. Plaintiff asserts two claims for relief against Defendant, who is employed by DOCS as the Muslim Coordinating Chaplain at Five Points.  Specifically, Plaintiff claims that after complaining by letter to the DOCS Coordinating Chaplin in Albany, Imam K. Abdulkhabir ("Imam Abdulkhabir"), regarding Defendant's repeated failure to resolve a matter pertaining to accusations Plaintiff made as to one of Defendant's clerks, Defendant "hatched a nefarious scheme to silence and get rid of plaintiff by soliciting the aid of another Muslim inmate which would have resulted in a violent physical act." First Claim for Relief, Complaint at 5A-5B ("First Claim").  Plaintiff further alleges that when Defendant realized his "nefarious scheme" had been "exposed," Defendant arranged for Lieutenant Chuttey to issue a false misbehavior report against Plaintiff, seeking to have Plaintiff removed from the general prison population and placed in the correctional facility's Special Housing Unit ("SHU"), for one year.  Second Claim for Relief, Complaint at 5B-5C.

On March 18, 2010, Defendant filed the instant motion (Doc. No. 26) seeking summary judgment ("Defendant's motion"), along with supporting papers, including the Declaration of Omar Abdel-Razzaq in Support of Defendant's Motion for Summary

Judgment (Doc. No. 27) ("Defendant's Declaration"), with attached exhibits A through C ("Defendant's Exh(s). __"), the Declaration of Lieutenant Brian Chuttey in Support of Defendant's Motion for Summary Judgment (Doc. No. 28) ("Chuttey Declaration"), with attached exhibits A through C ("Chuttey's Exh(s). __"), the Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment (Doc. No. 29) ("Defendant's Statement of Facts"), and a Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Doc. No. 30) ("Defendant's Memorandum").

In opposition, Plaintiff filed on January 10, 2011, Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc.  No.  41) ("Plaintiff's Response"), with attached exhibits 1 through 13 ("Plaintiff's Exh(s). __"), a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc.  No.  42) ("Plaintiff's Memorandum"), and a Statement of Genuine Issues of Material Facts in Support of Plaintiff's Answer for Summary Judgment (Doc.  No.  43) ("Plaintiff's Statement of Facts"), with an attached exhibit ("Plaintiff's Statement of Facts Exhibit").  No papers in further support of Defendant's motion have been filed.  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be GRANTED.


**FACTS**[1]

In late June or early July 2007, Plaintiff spoke with Defendant regarding an

---

[1] Taken from the pleadings and motion papers filed in this action.

unspecified issue, involving tenant of the Muslim religion, concerning accusations Defendant alleged Plaintiff made to one of Defendant's clerks.  Plaintiff repeatedly requested Defendant resolve the matter before it escalated and resulted in violence among Five Points' Muslim inmates, and refused to attend Five Point's Jumu'ha services (an Islamic religious exercise), held each Friday.  When Defendant failed to resolve the matter, Plaintiff, by letter to Imam Abdulkhabir, DOCS's Ministerial Program Coordinator in Albany, dated August 14, 2007 ("August 14, 2007 letter"),[2] advised that despite repeated attempts to resolve issues involving Defendant's three clerks, Rashid, Sabur, and Salih (together, "the clerks"),[3] Defendant had failed to take any corrective action.  August 14, 2007 letter at 1.  Plaintiff reported to Imam Abdulkhabir that Rashid falsely accused Plaintiff of attending Muslim classes only to challenge Salih, and that Defendant, by failing to take corrective action with regard to the lies, was covering up for his three clerks, such that Plaintiff could no longer attend Jumu'ah services and classes to prevent Plaintiff "from harming one of those lying clerks should they utter the wrong thing."  *Id*. at 2.  Plaintiff requested Imam Abdulkhabir to either have the matter resolved, or have Defendant replaced "[b]efore matter escalate and Muslims begin to fight each other . . . ." *Id*.  Plaintiff does not further describe the alleged lies, other than to refer to them as "slanderous." *Id*.  The notation "cc: Imam Omar," appearing at the end of the August 14, 2007 letter, indicates Defendant was to receive a copy of the letter.  *Id*.  at 3.

---

[2] Plaintiff's Exh.1; Defendant's Exh. A.

[3] The clerks are not otherwise identified by their full names.

4

Plaintiff, by letter to Imam Abdulkhabir dated August 15, 2007 ("August 15, 2007 letter"),[4] advised that in the August 14, 2007 letter, Plaintiff "deliberately omitted a[n] issue concerning the Shi'ites because [Plaintiff] did not have permission to include it," and that Plaintiff had also recalled another previously forgotten issue. August 15, 2007 letter at 1. According to Plaintiff, when Defendant approached the clerks regarding the alleged slanderous statements made regarding Plaintiff, the clerks refused to participate in the discussion. August 15, 2007 letter at 1. Plaintiff explains that because Islam does not permit an accused to refuse to participate in a hearing or discussion, Defendant was required, under Islamic law, to render a decision based on the evidence, including evidence that was unrefuted by the clerks who refused to participate in the discussion. *Id*. Plaintiff further asserts that Defendant's refusal to render a decision establishes Defendant role as the Muslim chaplain is a "farce," is encouraging the Muslim inmates to fight each other, and is biased against certain Muslims. *Id*. at 1-2. Plaintiff concludes that Defendant, by failing to resolve the issues, is encouraging or provoking the Muslims to fight each other. *Id*. at 2. The notation "cc: Imam Omar," appearing at the end of the August 15, 2007 letter, indicates Defendant was to receive a copy of the letter. *Id*. at 2.

By letter to Imam Abdulkhabir dated August 17, 2007 ("August 17, 2007 letter"),[5] Plaintiff advised that while in the correctional facility's law library on August 16, 2007, "Muslims," not otherwise identified, informed that Defendant was threatening to write an

---

[4]Plaintiff's Exh. 2; Defendant's Exh. B.

[5] Plaintiff's Exh. 3; Chuttey's Exh. A.

inmate misbehavior report against Plaintiff.  August 17, 2007 letter at 1.  Plaintiff further states that he "distributed copies of my letters to Muslims who have an interest in the outcome of the lies and slander.  Even if they didn't, and I distributed it to everyone, it would be to clear up the lies and slander, since Imam Omar [Defendant] refused to adhere to the Qur'an and Sunnah."  *Id*.  The notation "cc: Imam Omar," appearing at the end of the August 17, 2007 letter, indicates Defendant was to receive a copy of the letter.  *Id*.

In an Inmate Misbehavior Report dated August 17, 2007 ("Misbehavior Report"),[6] Lieutenant Chuttey reported that Defendant complained of receiving two letters from Plaintiff that threatened, harassed, and openly challenged Defendant's authority as Muslim chaplain of the correctional facility.  Misbehavior Report at 1.  According to Chuttey, Defendant reported Plaintiff had engaged in organizing, in violation of DOCS Inmate Rules ("Inmate Rules"), within the correctional facility's Muslim community by distributing copies of the letters to Muslim inmates in an attempt to secure a position of authority among the Muslim inmates.  *Id*.  Chuttey further reports Plaintiff is upset because Defendant will not allow Plaintiff to establish at the correctional facility "an inmate run justice and punishment system within the Muslim population."  *Id*. at 2.  According to Chuttey, Plaintiff has disputes with the inmates Defendant has appointed as his Muslim clerks, maintaining such the Muslim clerks should be selected by a vote among the Muslim prison population, rather than selected by the correctional facility's administration and Imam.  *Id*.  Plaintiff also admitted distributing the August 14 and 15,

---

[6] Defendant's Exh. C; Chuttey's Exh. B.

2007 letters to Muslim inmates who are interested in the resolution of the alleged lies and slander, and cell searches revealed several inmates to be in possession of such copies. *Id*. at 3.  As a result, Chuttey charged Plaintiff with violating Inmate Rules 102.10 (threats), 104.11 (violent conduct),104.12 (action detrimental to the order of the facility), 105.12 (unauthorized organization), 107.10 (interference with employee), and 107.11 (harassment).

A Tier III disciplinary hearing on the Misbehavior Report was held on June 18, 2008 ("the disciplinary hearing"), before DOCS Hearing Officer Captain Lacy ("H.O. Lacy"), following which H.O. Lacy issued his decision ("the hearing decision"), finding Plaintiff not guilty of violating Inmate Rules 102.10, 104.11, 107.10, and 107.11, but found Plaintiff guilty of 104.12 (action detrimental to the order of the facility), and 105.12 (unauthorized organization).  H.O. Lacy imposed on Plaintiff a disciplinary sentence of 12 months SHU confinement, with loss of commissary, packages, and telephone privileges.  Plaintiff appealed the hearing decision to DOCS Central Office Review Committee ("CORC").  On July 25, 2008, CORC dismissed the violation of Inmate Rule 105.12 (unauthorized organization), but affirmed the violation of Rule 104.12 (action detrimental to the order of the facility) based on Plaintiff's distribution of the August 14 and 15, 2007 letter to other Muslim inmates in an attempt to garner support for Plaintiff's desire to form a separate Muslim justice system within the correctional facility, and modified Plaintiff's disciplinary sentence to six months SHU confinement, with loss of commissary, packages and telephone privileges.  Because Plaintiff had been in SHU since August 17, 2008, when the Misbehavior Report was issued, Plaintiff was released from SHU following CORC's decision, and thus served over 11 months in SHU on the

single charge that was affirmed.

## **DISCUSSION**

Defendant moves for summary judgment, dismissing both claims against them on the basis that Plaintiff's allegations "are wholly conclusory and unsubstantiated," and unable to support either alleged retaliation claim.  Defendant's Memorandum at 3-4. Alternatively, Defendant contends he is qualifiedly immune from liability on Plaintiff's claims. *Id*.  at 10-12.

### 1.    **Summary Judgment**

Summary judgment on a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory

statements or on contentions that the affidavits supporting the motion are not credible."

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)

(citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment

motion are not 'genuine' issues for trial."  *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614,

619 (2d Cir.1996).  Furthermore, because Plaintiff is proceeding *pro se*, the court is

required to liberally construe Plaintiff's papers submitted in opposition to summary

judgment.  *Triestman v.  Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir.

2009) ("It is well established that the submissions of a pro se litigant must be construed

liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting

*Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))

Plaintiff maintains Defendant violated his civil rights under 42 U.S.C. § 1983,

pursuant to which an individual may seek damages against any person who, under

color of state law, subjects such individual to the deprivation of any rights, privileges, or

immunities protected by the Constitution or laws of the United States. Section 1983,

however, "'is not itself a source of a substantive rights,' but merely provides 'a method

for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266,

271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first

step in any such claim is to identify the specific constitutional right allegedly infringed."

*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).

In the instant case, both of Plaintiff's claim essentially allege Defendant retaliated against Plaintiff for petitioning for redress of grievances, in violation of the Eighth Amendment.  In particular, Plaintiff alleges that after complaining about Defendant to Imam Abdulkhabir, Defendant retaliated against Plaintiff by "hatch[ing] a nefarious scheme to silence and get rid of Plaintiff by soliciting the aid of another Muslim inmate which would have resulted in a violent physical act."  First Claim, ¶ 5.  Plaintiff also alleges that when Defendant realized "his nefarious scheme was exposed," Defendant further retaliated against Plaintiff by directing Lieutenant Chuttey to write a false misbehavior report regarding Plaintiff, as a result of which Plaintiff was given a disciplinary sentence of 12 months, six months in excess of the six-month disciplinary sentence sustained on Plaintiff's administrative appeal, with concomitant loss of commissary, packages and telephone privileges.  Second Claim, ¶ 1-2.

Defendant argues in support of summary judgment that Plaintiff's retaliation claims are "wholly conclusory and unsubstantiated" and, thus, not constitutionally cognizable.  Defendant's Memorandum at 3-10.  Alternatively, Defendant maintains he is qualifiedly immune from liability on both claims.  *Id*. at 10-12.  In opposition to summary judgment, Plaintiff asserts that he has established a causal connection between Plaintiff's complaining to Imam Abdulkharib and Defendant's alleged retaliatory conduct given that Plaintiff "was the sole Muslim to speak out against the issues that defendant's clerk created a volatile environment for the Muslims."  Plaintiff's Memorandum at 6-9.  Plaintiff further maintains that although Defendant realized that Plaintiff's distribution of the August 14 and 15, 2007 letters Plaintiff wrote to Imam

Abdulkhabir regarding Defendant's failure to act was in violation of Inmate Rules,

Defendant did not seek to have Plaintiff charged with such violation but, rather,

concocted a "nefarious plan" and when that plan failed, sought out prison security

officers to handle the matter by falsely disciplining Plaintiff.  *Id*. at 9-14.  Plaintiff further

asserts that Defendant is not entitled to qualified immunity because Plaintiff's First

Amendment right to petition for redress of grievances without fear of retaliation was

well-recognized by 2007.  *Id*.  at 15-17.

"Courts properly approach prisoner retaliation claims with skepticism and

particular care, because virtually any adverse action taken against a prisoner by a

prison official - even those otherwise not rising to the level of a constitutional violation -

can be characterized as a constitutionally proscribed retaliatory act."  *Davis v. Goord*,

320 F.3d 346, 352 (2d Cir. 2003) (internal quotations omitted).  The elements of a §

1983 First Amendment retaliation claim include "(1) that the speech or conduct at issue

was protected, (2) that the defendant took adverse action against the plaintiff, and (3)

that there was a causal connection between the protected speech and the adverse

action."  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).

Here, with regard to the first element, it is well-established that by writing letters

to Imam Abdulkhabir complaining about Defendant's failure to take any corrective

action with regard to alleged falsehoods and slanderous statements made by

Defendant's clerks, Plaintiff engaged in speech protected under the First Amendment.

*Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006)

(stating in context of § 1983 First Amendment retaliation claim, "complaints, protests,

and lawsuits are protected speech").  As to the second element, the court assumes, for

the purposes of Defendant's motion, that Defendant's alleged concoction of a

"nefarious scheme" designed to subject Plaintiff to physical assault and injury, as well

as the filing of a false misbehavior report resulting in 12 months confinement in SHU

and loss of commissary, packages and telephone privileges, constitute adverse actions

because it is not implausible that such conduct "would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights" as

required.  *Davis*, 320 F.3d at 353 (discussing adverse action requirement of a retaliation

claim).  The court also assumes, *arguendo*, that the causation element would be met if

Plaintiff's allegations regarding Defendant's alleged adverse actions were true, and that

Plaintiff's participation in constitutionally protected conduct "played a substantial part in

the adverse action."  *Davis*, 320 F.3d at 354 (citing *Dawes v. Walker*, 239 F.3d 489, 492

(2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, (2002)).  In the instant case, however, Plaintiff has failed to submit any evidence

establishing that Defendant engaged in the alleged adverse actions against Plaintiff,

such that both of Plaintiff's First Amendment retaliation claims fail on the second

element.

       In particular, with regard to the First Claim, although Plaintiff alleges Defendant

"hatched a nefarious scheme to silence and get rid of plaintiff by soliciting the aid of

another Muslim inmate which would have resulted in a violent physical act," First Claim

¶ 5, the record is devoid of any evidence that Plaintiff was ever subjected to any

"nefarious scheme" involving an act of physical violence directed against Plaintiff in an

attempt to secure Plaintiff's confinement in SHU to retaliate against Plaintiff for

complaining to Imam Abdulkhabir about Defendant or that Defendant engaged in the

12

alleged solicitation of violence against Plaintiff.  Plaintiff identifies the "Muslim inmate" whose "aid" Defendant solicited to carry out a violent physical act against Plaintiff as Wayne Bolden ("Bolden"), *see*, *e.g.*, Plaintiff's Statement of Facts ¶¶ 7, 13, 16, 17; Plaintiff's Response ¶¶ 8-10, 65, yet Plaintiff submits no statement either from Bolden attesting to Defendant's alleged solicitation of Bolden, or from any other inmate or DOCS employee familiar with the situation corroborating Plaintiff's description of Defendant's "nefarious scheme."  Instead, Plaintiff relies on Plaintiff's own transcription of Bolden's testimony at Plaintiff's Disciplinary Hearing before H.O. Lacy, Plaintiff's Response ¶ 47, which, even if correct, fails to establish Defendant recruited Bolden to instigate a physical altercation with Plaintiff so as to arrange for Plaintiff's ultimate confinement in SHU to retaliate against Plaintiff for complaining to Imam Abdulkhabir about Defendant.

In particular, Plaintiff writes:

| | |
|---|---|
| [Cowart] | Did he [Bolden] come to me when I was in the law library and tell me that the Imam approached him [Bolden] and said, he [Defendant] wanted him [Bolden] to speak to me about something. And, he [Bolden] said, if I did its gonna be a fight" |
| [Lacy] | Did ah (Bolden interrupts H.O.) |
| [Bolden] | Yes, yes, yes. |
| [Lacy] | Mr.  Bolden, did the Imam, um ah come to you or ask you to intervene on his behalf with Mr. Cowart regarding the incident? |
| [Bolden] | He [Defendant] asked me to speak to him [Plaintiff] one day ah Floyd was in the law library. |
| [Lacy] | Did you |
| [Bolden] | Yes. |

Plaintiff's Response ¶ 47.

Simply put, nothing in the above exchange (even assuming it represents a complete recital of Bolden's testimony), establishes an issue of fact as to whether Defendant

recruited Bolden to instigate a fight with Plaintiff, intending that as a result of the fight, Plaintiff would face DOCS disciplinary charges and be placed in SHU.

Rather, Bolden's testimony at Plaintiff's disciplinary hearing establishes only that Defendant requested Bolden speak with Plaintiff, and that Bolden advised Defendant that if Bolden approached Plaintiff, there would likely be a physical altercation.  That there was no physical altercation between Bolden and Plaintiff establishes either that Defendant, upon being informed by Bolden that speaking with Plaintiff was likely to result in a physical altercation, told Bolden not to speak with Plaintiff, or that Defendant attempted, but failed to recruit Bolden for the alleged "nefarious scheme."  In either case, the exchange fails to establish that Defendant, to retaliate against Plaintff for complaining to Imam Abdulkhabir about Defendant, recruited Bolden to engage Plaintiff in a physical altercation with the ultimate intention of having Plaintiff confined in SHU, as Plaintiff alleges.  First Claim ¶ 6; Second Claim ¶ 1.

Plaintiff has thus failed to establish a material issue of fact as to whether Defendant, to deter Plaintiff from exercising his First Amendment right, recruited another inmate to engage in a physical altercation with Plaintiff, so as to satisfy the second element of a retaliation claim.  *Davis*, 320 F.3d at 353.  In the absence of any evidentiary support in the record establishing a material issue of fact that Defendant engaged in the requisite adverse action sufficient to deter a similarly situated inmate from exercising his First Amendment rights, Defendant's motion is, as to Plaintiff's First Claim, GRANTED.

With regard to Plaintiff's Second Claim, alleging that when Defendant realized "his nefarious scheme was exposed," Defendant directed Lieutenant Chuttey to write a

14

false misbehavior report regarding Plaintiff, as a result of which Plaintiff was given a disciplinary sentence of 12 months, with concomitant loss of commissary, packages and telephone privileges, Second Claim, ¶ 1-2, Plaintiff also fails to point to an issue of material fact establishing that Defendant was involved in having Chuttey write the misbehavior report, or that Plaintiff was found guilty of a charge not included in the misbehavior report such that the entire misbehavior report was false.

In particular, Plaintiff's alleged retaliation claim based on the filing of false disciplinary charges by Lieutenant Chuttey assumes, but does not establish, the prerequisite that the subject First Misbehavior Report's disciplinary charges were false. *See Jones v. Coughlin*, 34 F.3d 677, 679 (2d Cir. 1995) (vacating and remanding district court's decision that inmate plaintiff's claim of retaliatory filing of false misbehavior report was wholly conclusory as based solely on adverse disciplinary decision where plaintiff, although provided a hearing on the disputed disciplinary charges, "was unfairly denied the right to call key witnesses in defense of the charges against him," and, thus, had no opportunity to prove charges were false, as required before the district court could consider whether filing of false charges was intended to retaliate against the plaintiff).  The filing of a false misbehavior report does not constitute "a *per se* constitutional violation actionable under § 1983" provided the inmate is afforded due process protection through a disciplinary hearing on the misbehavior report.  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988).  "The key inquiry in assessing an allegation that an

inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections [to dispute a false or incorrect charge] guaranteed by the Fourteenth Amendment." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (bracketed material added). Summary judgment on a retaliation claim based on the filing of a false misbehavior report, however, is improper where an inmate either is not granted a hearing on the alleged false disciplinary charges, or is granted a disciplinary hearing, but is unfairly denied the right to rebut the charges by presenting evidence or calling witnesses in defense of the charges against him. *Jones*, 45 F.3d at 679.

Insofar as Plaintiff alleges that he was never found guilty of any of the Inmate Rule violations charged in the misbehavior report, such that the report is completely false, Plaintiff's Response ¶¶ 77-80, the record establishes otherwise. In particular, Plaintiff was, subsequent to the Tier III disciplinary hearing, found guilty by H.O. Lacy of two of the charges contained in the Misbehavior Report, including violating Inmate Rules 104.12 (action detrimental to the order of the facility), and 105.12 (unauthorized organization). Disciplinary Hearing Tr.[7] at 90-91. H.O. Lacy explained that his Disciplinary Hearing disposition was based on Chuttey's statement in the misbehavior report that Plaintiff had authored and distributed to the Muslim inmate community a letter informing of Plaintiff's desire to establish "an internal justice panel and a gadi or judge. . . ." Disciplinary Hearing Tr. at 91. H.O. Lacy further took into consideration testimony provided by Plaintiff and Plaintiff's witness corroborating that Plaintiff had

---

[7] References to "Disciplinary Hearing Tr. at __" are to the page of the transcript of Plaintiff's June 18, 2008 Disciplinary Hearing before H.O. Lacy, portions of which are filed as Chuttey's Exh. C.

distributed such letter to various Muslim inmates.  *Id*.  According to H.O. Lacy, the distribution of a letter calling for the establishment of a "justice panel" separate from the IGRP raised concerns that Plaintiff was attempting to organize a group of Muslim inmates who favored a separate inmate disciplinary justice system over DOCS disciplinary system, which could create a "severe situation" that was a threat to prison security.  *Id*. at 92.  H.O. Lacy further specified he considered that Plaintiff's distribution of the letter was an attempt to garner support from other Muslim inmates for Plaintiff's idea of a separate Muslim justice panel, and considered seeking such support an attempt to demonstrate against the current prison disciplinary system. *Id*.  at 92-93.

Although on July 25, 2008, the CORC dismissed the violation of Inmate Rule 105.12 (unauthorized organization), the violation of Inmate Rule 104.12 (action detrimental to the order of the facility) was affirmed.  Plaintiff maintains, however, that he was found guilty of "demonstration," a charge not included in the Misbehavior Report and, as such, the affirmation of Inmate Rule 104.12 is without any legal basis.  Plaintiff's Response ¶¶ 78-80.  Plaintiff's argument is without merit.

Specifically, Inmate Rule 104.12 falls under DOCS prison disciplinary Rule Series 104, which, as set forth in the relevant New York regulations, is entitled "Riot, Disturbances and Demonstrations."  7 N.Y.C.R.R. § 270.2 (underlining added).  Under Inmate Rule 104.12, which Plaintiff was specifically charged with violating, "[a]n inmate shall not lead, organize, participate, or urge other inmates to participate, in a work-stoppage, sit-in, lock-in, or other actions which may be detrimental to the order of facility."  7 N.Y.C.R.R. § 270.2.B.5.iii (underlining added).  It thus logically follows that because Plaintiff was specifically charged with violating Inmate Rule 104.12 (action

17

detrimental to the order of the facility), by distributing letters to Muslim inmates in an attempt to garner support for a separate Muslim disciplinary system, Plaintiff was found guilty of urging other inmates to participate in an action detrimental to the order of the correctional facility.

H.O. Lacy stated he found Plaintiff guilty of "attempting" to demonstrate, Disciplinary Hearing Tr. at 92-93, although the word "attempt" does not appear within the text of Inmate Rule 104.12.  Nevertheless, Inmate Rule 104.12 does forbid an inmate to "urge other inmates to participate" in any action "which may be detrimental to the order of [the correctional] facility."  7 N.Y.C.R.R. § 270.2B.5.iii (bracketed text added).  Significantly, the use of the word "urge" in the text of Inmate Rule 104.12 supports a finding that Plaintiff, by distributing copies of the August 14 and 15, 2007 letters to other Muslim inmates, was "urging" such inmates to participate in action detrimental to the order of the correctional facility, an action which H.O. Lacy construed under Rule 104.12 as an "attempt to demonstrate," although the "attempt" was unsuccessful.  Disciplinary Hearing Tr.  at 93 (H.O. Lacy stating, "I honestly believe that you [Plainitff] did this in the hopes that you would have other members of the community follow and that's where the demonstration falls.  I don't believe that it was a successful demonstration.").

This conclusion is consistent with H.O. Lacy's explanations to Plaintiff in two separate letters to Plaintiff, dated June 19, 2008 and June 24, 2008 (Plaintiff's Exh. 13), implying Plaintiff's opposition to H.O. Lacy's finding that Plaintiff was guilty of an uncharged attempt to violate Inmate Rule 104.12, in which H.O. Lacy explains that his disposition finding Plaintiff guilty of "attempting" to demonstrate, even though the word

"attempt" does not appear in the Misbehavior Report, "was intended to refer to your [Plaintiff's] passing out the letters to other members of the Muslim Community.  By passing out the letter, even to only a few inmates, I perceived that as an attempt to demonstrate."  As such, there is no merit to Plaintiff's assertion that he was found guilty of "demonstrating" despite never having been charged with such rule violation, such that the Misbehavior Report was false.

Furthermore, with regard to Plaintiff's assertion that Defendant directed Lieutenant Chuttey to issue the Misbehavior Report, Defendant avers, and Plaintiff does not dispute, that Defendant was authorized by DOCS to issue inmate misbehavior reports and, thus, did not have to recruit another DOCS employee to do so. Defendant's Declaration ¶¶ 16-17.  Defendant further explains that after receiving copies of the August 14 and 15, 2007 letters, Defendant referred the letters to Captain Robinson for handling because several inmates had advised Defendant that Plaintiff had further distributed copies of the letters to other inmates in violation of DOCS Inmate Rules.  *Id*. ¶¶ 10, 16.  Defendant also discussed the matter with Lieutenant Chuttey, but did not ask Chuttey to issue a misbehavior report. *Id*. ¶ 16.  Although Defendant could have issued an Inmate Misbehavior Report based solely on Plaintiff's distribution of the letters to other inmates, Defendant explains that he is of the "opinion that security issues are to be determined and handled by the Five Points Correctional Facility security staff," *Id*. ¶  16, and, thus, "chose to refer the matter to DOCS security staff for handling."  *Id*. ¶ 17.

Defendant's version of the events is consistent with Lieutenant Chuttey's explanation that on August 17, 2007, he was advised by Captain Robinson that Plaintiff

was writing potentially inappropriate letters to Imam Abdulkhabir, with carbon copies to Defendant. Chuttey Declaration ¶ 4. Chuttey further learned based on statements in the August 17, 2007 letter that Plaintiff had distributed copies of the August 14 and 15, 2007 letters to other inmates. *Id*. Based on the content of the letters, copies of which Plaintiff asserted he was distributing to other inmates, Chuttey conducted cell frisks which revealed three inmates, Middleton, Brown, and Weeks, were in possession of the letters. *Id*. ¶ 5, and Misbehavior Report at 3. According to Chuttey, at no time to Defendant request Chuttey to issue the Misbehavior Report to retaliate against Plaintiff's complaints about Defendant to Omam Abdulkhabir; rather, Chuttey's decision to issue the Misbehavior Report was based on the content of the letters Plaintiff admittedly had mailed to Imam Abdulkhabir, and the undisputed fact that Plaintiff had distributed copies of the letters to other inmates, in violation of DOCS Inmate Rules. Chuttey Declaration ¶¶ 7, 10.

It is significant that Plaintiff has not denied distributing copies of the August 14 and 15, 2007 letters to other inmates. Further, that Plaintiff was found guilty of action detrimental to the order of the correctional facility both by H.O. Lacy following the Tier III disciplinary hearing, as well as on appeal to the CORC, establishes the Misbehavior Report was not false, and that Plaintiff received all process due in connection with the Misbehavior Report, a fact not disputed by Plaintiff. As such, Plaintiff is unable to establish, as a material issue of fact requiring trial, that Defendant took any adverse action against Plaintiff in connection with the issuance of the Misbehavior Report.

Summary judgment on Plaintiff's Second Claim is GRANTED.

**2.      Qualified Immunity**

Because the court is granting summary judgment in favor of Defendant on the

merits of both Claims for Relief, Defendant's alternative argument, that Defendant is

qualifiedly immune from liability in this action, is not addressed.


**CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment (Doc.  No.

26), is GRANTED; the Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 14, 2011
            Buffalo, New York

**Any appeal of this Decision and Order to the United States Court of**
**Appeals for the Second Circuit, New York, New York, must be filed within**
**thirty (30) days of the date of judgment in accordance with Fed.R.App.**
**4(a)(1)(A) and (c).**